NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED VAN LINES, LLC and MCCOLLISTER'S TRANSPORTATION SERVICES, INC., <br><br> Plaintiffs, <br><br> v. <br><br> LOHR PRINTING, INC., <br><br> Defendant. | Civ. No. 11-4761 <br><br> OPINION |

THOMPSON, U.S.D.J.

RECEIVED
MAR 29 2012
AT 8:30_____M
WILLIAM T. WALSH
CLERK

This matter has come before the Court on Plaintiffs United Van Lines, LLC ("United Van Lines") and McCollister's Transportation Services, Inc.'s ("McCollister's Transportation") Motion to Dismiss Defendant's State Law Affirmative Defenses and Counterclaims [docket # 13]. Defendant Lohr Printing, Inc. ("Lohr Printing") opposes the motion [17]. The Court has decided the Motion upon the submissions of the parties and without oral argument pursuant to Fed. R. Civ. P. 78(b). For the following reasons set forth below, Plaintiffs' Motion will be granted in part and denied in part.

I.   BACKGROUND

This matter arises out of damage to certain equipment that occurred in transit. Defendant Lohr Printing is in the business of making text book covers. (Answer ¶ 48) [7]. In the course of its business it acquired a Canon Image Press 6000 VP-4, bearing Serial Number CWM00081 (the "Printer") from Canon Business Solutions (CBS). (*Id.* ¶ 49). At the time Lohr Printing leased the Printer in April 2009, it had a value of approximately $261,000.00. (*Id.*).

1

In February 2011, Richard C. Lohr, Jr., president of Lohr Printing, advised CBS account representative Rodney R. Held, who had sold Lohr Printing the Printer and other specialized printers, of his intention to relocate the Printer to the facility of one of its customers, BR Printers, Inc., in Hightstown, New Jersey while it was still under lease. (*Id.* ¶ 51). In the course of that conversation, Mr. Held offered to assist in arranging this move and advised that CBS had often used McCollister's Transportation for its shipping needs given their experience in handling similar pieces of equipment. (*Id.* ¶¶ 51–52).

On February 16, 2011, Mr. Held contacted Sonaie Loney, a customer service coordinator for McCollister's Transportation and requested a quote to move the Printer from Lohr Printing's facilities in Florence, Kentucky to Hightstown, New Jersey. (*Id.* ¶ 53). He advised her of the specific type of machine and its approximate value. (*Id.*). He also discussed having Canon technicians crate the machine for transport. (*Id.*). Ms. Loney purportedly told him that crating was not necessary and that, instead, the machine should be broken down into its major component parts and that they would be able to safely ship it in that way. (*Id.*). Later on February 16, 2011, Ms. Loney e-mailed Mr. Held a quote from McCollister's Transportation to ship the Printer to New Jersey for $795.72, with a small variable for the fuel charge. (*Id.* ¶ 54). No discussion was raised with respect to liability limits for the shipment. (*Id.*).

After a period of negotiations by the parties, Ms. Loney revised her quote to Mr. Held offering a lower price of $669.00, which was based on a 65% discount and the caveat that the price could change based on fuel charges. (*Id.* ¶ 55). Mr. Held discussed this offer with Mr. Lohr, who indicated that this price was acceptable. (*Id.*).

On or about March 16, 2011, Mr. Held notified Ms. Loney that the quoted price was acceptable to Lohr Printing. Ms. Loney then contacted Mr. Lohr who provided credit card information to pay for the shipping. (*Id.* ¶ 56). During this period of negotiations, Lohr

contends that Ms. Loney never mentioned anything to indicate that McCollister's Transportation intended to limit its liability for safe delivery to anything less than full value of the Printer and never discussed alternative rates with different liability limits. (*Id.*). Lohr Printing additionally contends that Ms. Loney did not disclose that this quote was given as agent for another carrier or, for that matter, make any mention of Plaintiff United Van Lines. (*Id.*)

On or about March 29, 2011, a driver in a United Van Lines truck picked up the Printer at Lohr Printing's facility. (*Id.* ¶ 58). At the time of the pick-up, Mr. Lohr was purportedly handed United Van Lines' Uniform Bill of Lading No. 18-2875-1 ("Bill of Lading") and directed to sign separately a section of the Bill of Lading entitled "Carrier Liability," which recites in relevant part: "The shipper declares value of property to be $5.00/LB and hereby releases and limits value and liability subject to the contract terms and conditions on the reverse hereof, in addition to all other limitations, rules, regulations, rates and charges in the carrier's applicable tariffs or rate schedules which are referred herein." (Compl. Ex. 1).

On or about April 4, 2011, the Printer was delivered by United Van Lines to BR Printers, Inc. in Hightstown, New Jersey. (Compl. ¶ 12) [1]. Defendant contends that it was immediately clear that the Printer had been damaged in transport. (Answer ¶ 60). On April 13, 2011, Lohr Printing filed a "Presentation of Claim for Loss and Damages" form with Plaintiffs. (*Id.*). Despite attempts to repair the machine, Lohr Printing was advised that the machine could not be repaired and that it was a total loss. (*Id.* ¶ 61).

On August 17, 2011, United Van Lines and McCollister's Transportation filed a Complaint requesting a declaratory judgment that United Van Lines is only liable to Lohr Printing for $13,000.00 under the interstate Bill of Lading, and that McCollister's Transportation, as the agent to United Van Lines, has no liability under the Carmack Amendment to the Interstate Commerce Act, 49 U.S.C. § 14706. In response, Lohr Printing filed its Answer

on November 13, 2011, asserting various affirmative defenses as well as counterclaims against both Plaintiffs. In their Motion to Dismiss, Plaintiffs now ask the Court to dismiss certain counterclaims pursuant to Rule 12(b)(6) and to strike certain affirmative defenses under Federal Rule of Civil Procedure 12(f).

### II. LEGAL STANDARD

#### a. Motion to Dismiss

On a motion to dismiss for failure to state a claim, a "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). Dismissal is appropriate only if, accepting as true all the facts alleged in the complaint, a plaintiff has not pleaded "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), meaning enough factual allegations "'to raise a reasonable expectation that discovery will reveal evidence of'" each necessary element, *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556); *see also Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993) (requiring a complaint to set forth information from which each element of a claim may be inferred).

When considering a Rule 12(b)(6) motion, a district court should conduct a three-part analysis. *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'take note of the elements a plaintiff must plead to state a claim.'" *Id.* (quoting *Ashcroft v. Iqbal*, --- U.S. ---, 129 S. Ct. 1937, 1947 (2009)). Second, the court must accept as true all of a plaintiff's well-pleaded factual allegations and construe the complaint in the light most favorable to the plaintiff. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009). But, the court should disregard any conclusory allegations proffered in the complaint. *Id.* Finally, once the well-pleaded facts have been identified and the conclusory allegations ignored, a court must next determine whether the "facts are sufficient to show that plaintiff has a 'plausible claim for

relief.'" *Id.* at 211 (quoting *Ashcroft v. Iqbal*, 129 S. Ct. at 1949). This requires more than a mere allegation of an entitlement to relief. *Id.* "A complaint has to 'show' such an entitlement with its facts." *Id.* A claim is only plausible if the facts pleaded allow a court reasonably to infer that the defendant is liable for the misconduct alleged. *Id.* at 210 (quoting *Iqbal*, 129 S. Ct. at 1948). Facts suggesting the "mere possibility of misconduct" fail to show that the plaintiff is entitled to relief. *Id.* at 211 (quoting *Iqbal*, 129 S. Ct. at 194). When considering a Rule 12(b)(6) motion, a court's role is limited to determining whether a plaintiff is entitled to offer evidence in support of the alleged claims. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). The Court does not consider whether a plaintiff will ultimately prevail. *See id.*

Courts use the same standard in ruling on a motion to dismiss a counterclaim under Federal Rule of Civil Procedure 12(b)(6) as they do for a complaint. *See, e.g., PPG Indus., Inc. v. Generon IGS, Inc.*, 760 F.Supp.2d 520, 524 (W.D. Pa. 2011); *Tyco Fire Products LP v. Victaulic Co.*, 777 F.Supp.2d 893, 898 (E.D.Pa. 2011). In view of this standard, the Court must "accept as true all of the allegations in the [Defendant's counterclaims] and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the non-moving party." *Rocks v. City of Phila.*, 868 F.2d 644, 645 (3d Cir. 1989).

    b. <u>Motion to Strike</u>

Under Federal Rule of Civil Procedure 12(f), a "court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." FED. R. CIV. P. 12(f). "It is well-established that '[b]ecause of the drastic nature of the remedy . . . motions to strike are usually viewed with disfavor and will generally be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issues.'" *Garlanger v. Verbeke*, 223 F. Supp. 2d 596, 609 (D.N.J. 2002).

An affirmative defense is insufficient if "it is not recognized as a defense to the cause of action." *Tonka Corp. v. Rose Art Indus., Inc.*, 836 F. Supp. 200, 217 (D.N.J. 1993) (quoting *Total Containment, Inc. v. Environ Prods., Inc.*, No. 91-7911, 1992 WL 208981, at *1 (E.D. Pa. Aug. 19, 1992)). Thus, on the basis of the pleadings alone, "an affirmative defense can be stricken only if the defense asserted could not possibly prevent recovery under any pleaded or inferable set of facts." *Id.* at 218 (quoting *Linker v. Custom-Built Mach., Inc.*, 594 F. Supp. 894, 898 (E.D. Pa. 1984)). The district court's decision whether to grant a motion to strike under Rule 12(f) is discretionary. *See, e.g., FTC v. Hope Now Modifications, LLC*, No. 09-1204, 2011 U.S. Dist. LEXIS 24657, at *5 (D.N.J. Mar. 10, 2011).

### III.   DISCUSSION

There are three categories of counterclaims and defenses contained in the Answer, each of which raises separate and distinct legal issues. First, Lohr Printing asserts counterclaims against United Van Lines for negligence and breach of the covenant of good faith and fair dealing. Second, Lohr Printing asserts counterclaims against McCollister's Transportation arising out of its purported breach of contract. Lastly, Lohr Printing asserts affirmative defenses of waiver, equitable estoppel, mutual mistake and/or unilateral mistake, promissory estoppel, unclean hands, unconscionable agreement, and contract of adhesion.[1] The Court will address these in turn.

#### a.   Counterclaims asserted against United Van Lines

Plaintiff contends that the counterclaims asserted against United Van Lines should be dismissed because the Carmack Amendment preempts all state- and common-law claims arising from an interstate carrier's duties under its bill of lading. The Supreme Court of the United

---

[1] Lohr Printing has conceded that its affirmative defenses designated as (b) accord and satisfaction, (e) modification and abandonment, (g) set off and recoupment, and (h) statute of frauds should be dismissed. (Def.'s Opp'n Br. at 8).

States has held that the Carmack Amendment normally preempts state law claims against a carrier's loss of a shipped good. *See Adams Express Co. v. Croninger*, 226 U.S. 491, 505–06 (1913) (noting that Congress enacted the Carmack Amendment to "take possession of the subject [of interstate carriers' liability for lost property] and to supersede all state regulation").

In accordance with the Supreme Court ruling in *Adams Express*, courts within the Third Circuit have consistently found that the Carmack Amendment preempts causes of action based on state law. *See, e.g., Berryman v. Wheaton Van Lines, Inc.*, No. 06-5679, 2007 WL 1296762, at *2–4 (D.N.J. May 02, 2007); *Orlick v. J.D. Carton & Son, Inc.*, 144 F. Supp. 2d 337, 344 (D.N.J. 2001); *Usinor Steel Corp. v. Norfolk S. Corp.*, 308 F. Supp. 2d 510, 518 (D.N.J. 2004); *Harrah v. Minn. Mining & Mfg. Co.*, 809 F. Supp. 313, 317 (D.N.J. 1992) ("[C]ommon law actions against interstate carriers are preempted by the Interstate Commerce Act."); *Strike v. Atlas Van Lines, Inc.*, 102 F. Supp. 2d 599, 600 (M.D. Pa. 2000) (holding that the Carmack Amendment preempted state law causes of action "whether contract based or tort based claims"); *Tirgan v. Roadway Package Sys., Inc.*, No. 94-2768, 1995 WL 21098 at *4 (D.N.J. 1995) ("Courts have uniformly held that the Carmack Amendment preempts state law claims such as negligence, . . . arising out of damage to goods shipped pursuant to a bill of lading.").

Lohr Printing has failed to identify any case law that would suggest that its negligence and breach-of-the-covenant-of-good-faith-and-fair-dealing claims may proceed against United Van Lines. Indeed, "Defendant concedes that its rights with regard to United are framed by the Carmack Amenment and the Federal regulatory scheme." (Def.'s Opp'n Br. at 7). Consequently, it is clear that the counterclaims set forth by Defendant vis-à-vis Plaintiff United Van Lines are preempted by the Carmack Amendment and therefore will be dismissed.

### b. Counterclaims asserted against McCollister's Transportation

Plaintiffs additionally contend that Lohr Printing cannot bring its counterclaims against McCollister's Transportation as a disclosed agent of United Van Lines. Under the Carmark Amendment:

> Each motor carrier providing transportation of household goods shall be responsible for all acts or omissions of any of its agents which relate to the performance of household goods transportation services (including accessorial or terminal services) and which are within the actual or apparent authority of the agent from the carrier or which are ratified by the carrier.

49 U.S.C. §13907(a). Plaintiff cites a long list of cases for the proposition that the existence of an agency relationship between McCollister's Transportation and United Van Lines is enough to insulate McCollister's Transportation from Lohr Printing's breach of contract claims. (*See* Pls.' Br. at 9–11 (citing, *inter alia*, *Berryman*, 2007 WL 1296762, at *4; *Marks v. Suddath Relocation Sys., Inc.*, 319 F. Supp. 746, 752 (S.D. Tex. 2004); *Oliver v. Atlas Van Lines, Inc.*, 504 F. Supp. 2d 1213, 1217 (N.D. Ala. 2007); *Rehrn v. Balt. Storage Co.*, 300 F. Supp. 2d 408, 417 (W.D. Va. 2004); *Nichols v. Mayflower Transit, LLC*, 368 F. Supp. 2d 1104, 1109 (D. Nev. 2003); *Parramore v. Tru-Pak Moving Sys., Inc.*, 286 F. Supp. 2d 643, 649 (N.D.N.C. 2003); *Mallory v. Allied Van Lines, Inc.*, No. 02-7800, 2004 WL 870697 (E.D. Pa. Apr. 7, 2004))).

None of the cases cited by Plaintiffs, however, squarely address the present situation, in which there appears to be a question as to whether the McCollister's Transportation may be properly considered the disclosed agent of United Van Lines.[2] Defendant has alleged that McCollister's Transportation appeared on correspondence and documents related to the move

---

[2] Arguably, in the absence of a disclosed relationship, McCollister's Transportation should be treated as a broker because it did not act as a motor carrier in this transaction and ultimately only facilitated the delivery in question. Most courts have held that brokers are not subject to Carmack liability. *See, e.g., Chubb Grp. of Ins. Cos. v. H.A. Transp. Sys., Inc.*, 243 F. Supp. 2d 1064 (C.D. Cal. 2002); *Prof'l Commc'n, Inc. v. Contract Freighters, Inc.*, 171 F. Supp. 2d. 546, 551 (D. Md.2001); *Indep. Mach., Inc. v. Kuehne & Nagel, Inc.*, 867 F. Supp. 752, 761 (N.D. Ill. 1994); *Commercial Union Indus. Co. v. Forward Air, Inc.*, 50 F. Supp. 2d 255, 258 (S.D.N.Y. 1999); *Adelman v. Hub City L.A. Terminal*, 856 F. Supp. 1544, 1547–48 (N.D. Ala. 1994). Consequently, state law generally governs brokers' liability for any loss or damage of cargo in transit. *See id.*

and that it had a contract with McCollister's Transportation separate and apart from the bill of lading.

At this stage, the Court believes it would be inappropriate to dismiss the counterclaims against McCollister's Transportation. Defendant, by presenting the circumstances that surrounded its negotiations with McCollister's Transportation, has alleged facts sufficient to constitute a "plausible" claim for a breach of contract. The plausibility standard of *Iqbal* does not require total certainty. Instead, it is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 129 S. Ct. at 1950. Because many of the allegations in the Answer require a context specific inquiry and necessitate the development of the factual record before the Court can decided whether, as a matter of law, McCollister's Transportation can be held liable separate and apart from United Van Lines, Plaintiffs' arguments, which are certainly colorable, are best addressed by way of a motion for summary judgment after discovery has concluded.

c. Defendant's Remaining Affirmative Defenses

Plaintiffs contend that Defendant's equitable affirmative defenses have no relevance to the Complaint, which seeks a declaration pursuant to controlling federal law that United Van Lines' liability is limited to $5.00/lb. under the Bill of Lading. The Court, however, believes that any facts supporting Defendant's contentions can and should be fleshed out through discovery. Essentially, United Van Lines and McCollister's Transportation have asked the Court to rule on the viability of an affirmative defense before allowing Lohr Printing to explore the underlying merits of its claims. The Declaratory Judgment Act is not meant for this purpose. *See generally Coffman v. Breeze Corp.*, 323 U.S. 316, 322–24 (1945); *Calderon v. Ashmus*, 523 U.S. 740, 747 (1998). Accordingly, the Court will deny Plaintiffs' motions to strike Defendant's affirmative defenses pending the outcome of discovery. If, after adequate discovery, Plaintiffs believe that

there is insufficient evidence to support the affirmative defenses asserted, it may move for summary judgment.

## IV.  CONCLUSION

For the foregoing reasons, Plaintiffs' Motion will be granted in part and denied in part. An appropriate order will follow.

_____
ANNE E. THOMPSON, U.S.D.J.

Date: March 29, 2012

10