<u>NOT FOR PUBLICATION</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| UNITED VAN LINES, LLC and MCCOLLISTER'S TRANSPORTATION SERVICES, INC., | Civ. No. 11-04761 |
| Plaintiffs, | OPINION |
| v. | |
| LOHR PRINTING, INC., | |
| Defendant/Third Party Plaintiff, | |
| v. | |
| CANON, U.S.A., CANON FINANCIAL SERVICES, INC., CANON BUSINESS SOLUTIONS, INC., Sonaie LONEY, AND Rodney R. HELD | |
| Third Party Defendants, | |
| v. | |
| Richard LOHR, | |
| Fourth Party Defendant. | |

<u>THOMPSON, U.S.D.J.</u>

       This matter comes before the Court on two motions to dismiss and a cross-motion to

amend.  Third Party Defendants Canon Business Solutions, Inc. ("CBS") and Canon U.S.A., Inc.

("CUSA") have moved to dismiss Defendant and Third Party Plaintiff Lohr Printing, Inc.'s

("Lohr Printing's") Third Party Complaint [Docket Entry # 30] as against CUSA and CBS under

Federal Rule of Civil Procedure 12(b)(6) [45].  Plaintiff McCollister's Transportation Services,

Inc. ("McCollister's ") has also entered a motion to dismiss [49], seeking to dismiss Lohr

Printing's Third-Party Complaint [30] and Third-Party Defendant Canon Financial Services, Inc.'s ("CFS's") Cross-Claims [39] against former McCollister's employee, Sonaie Loney ("Ms. Loney"), pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6).  In response to these motions, Lohr Printing has cross-moved to file an Amended Counterclaim and Third Party Complaint.  [53].

Pursuant to Federal Rule of Civil Procedure 78(b), the Court has decided the above motions upon the submissions of the parties and without oral argument.  For the reasons included herein, the Court grants McCollister's Motion to Dismiss All Claims and Cross-Claims against Ms. Loney; grants CBS's Motion to Dismiss All Claims as pertain to CUSA and CBS; and denies Lohr Printing's Leave to File an Amended Third-Party Complaint.

## BACKGROUND

This matter originates from the damage of certain equipment during transit, and the subsequent disagreement over indemnification for that damage.

A. Facts as Alleged in Lohr Printing's First Amended Third Party Complaint

Lohr Printing is in the business of making textbook covers.  [30, "First Am. Third Party Compl.," at ¶ 50].  Richard C. Lohr, Jr. ("Mr. Lohr") is the president of Lohr Printing.  [*Id.* at 58].  In the course of its business, Lohr Printing leased a Canon Image Press 60000 VP-4, Serial Number CWM00081 (the "Printer") under a CBS service contract in April 2009; the Printer was leased through and owned by CFS.  [*Id.* at ¶¶ 51-52; 55].  Both CBS and CFS are affiliates of CUSA.  [*Id.* at ¶ 53].  Mr. Rodney R. Held ("Mr. Held") was the CBS account representative (and alleged agent of CFS and CUSA) who sold Lohr Printing the Printer, valued at the time of leasing at approximately $261,000.00.  [*Id.* at ¶¶ 54, 56].  Lohr Printing alleges that Mr. Held

additionally sold Lohr Printing other specialized printers, and that he was familiar with leasing Canon copiers and printers, and the accompanying lease terms.  [*Id.* at ¶ 56].

In February 2011, Mr. Lohr advised Mr. Held of his intention to relocate the Printer to the facility of one of its customers, BR Printers, Inc., in Hightstown, New Jersey while it was still under lease.  [*Id.* at ¶ 58].  In the course of that conversation, Mr. Held offered to assist in arranging this move.  [*Id.* at ¶ 59].  Mr. Held advised Mr. Lohr that (1) Canon[1] had often used McCollister's for its shipping needs, (2) McCollister's was experienced in handling similar pieces of equipment, and (3) Mr. Held would be able to secure a good price from McCollister's for transporting the Printer.  [*Id.* at ¶¶ 60-61].

On February 16, 2011, Mr. Held contacted Ms. Loney, a McCollister's customer service coordinator, and requested a quote to move the Printer from Lohr Printing's facilities in Florence, Kentucky to Hightstown, New Jersey.  [*Id.* at ¶ 62].  He advised her of the specific type of machine, its approximate value, and whether Canon technicians should crate the machine for transport.  [*Id.* at ¶ 63].  Ms. Loney purportedly told him that crating was unnecessary and that McCollister's could safely ship the machine after it was broken down into its major component parts.  [*Id.* at ¶ 64].

After a period of negotiations with Mr. Held as intermediary, [*id.* at ¶¶ 70-73], Mr. Held conveyed a shipping price acceptable to Mr. Lohr.  [*Id.* at ¶¶ 75-76].  Ms. Loney then contacted Mr. Lohr for payment via credit card.  [*Id.* at ¶¶ 77-78].  Lohr Printing contends that none of the various exchanges between Mr. Held, Ms. Loney, and Mr. Lohr involved any discussion of liability limits or that the offered quote was given by McCollister's as an agent for another carrier, United Van Lines, Inc. ("United").  [*Id.* at ¶¶ 65, 67, 74, 79].

---

[1] Lohr Printing interprets the general term "Canon" as referring to CBS, CFS, and CUSA.

On or about March 29, 2011, a driver in a United truck picked up the Printer at Lohr Printing's facility.  [*Id.* at ¶¶ 80-85].  At that time, the Printer was in good working order and had been broken down into its component parts by Canon technicians as previously directed.  [*Id.* at ¶¶ 81-84].  At the time of pick-up, Lohr was purportedly handed United's Uniform Bill of Lading No. 18-2875-1 ("Bill of Lading") and directed to sign separately a section of the Bill of Lading entitled "Carrier Liability."  [1, "First Party Complaint," at ¶ 11].  That section recites in relevant part: "The shipper declares value of property to be $5.00/LB and hereby releases and limits value and liability subject to the contract terms and conditions on the reverse hereof, in addition to all other limitations, rules, regulations, rates and charges in the carrier's applicable tariffs or rate schedules which are referred herein."  [*Id.*].  Lohr Printing does not admit the above in its Third Party Complaint, but refers to the Bill of Lading as a "document" that Mr. Lohr was instructed to sign in two places after the Printer was loaded on the truck, and a copy of which was only handed to Mr. Lohr after signature.  [First Am. Third Party Compl. at ¶¶ 88-89].

On April 4, 2011, the Printer was delivered in Hightstown, New Jersey.  [*Id.* at ¶ 91].  Allegedly, it was immediately clear that the Printer had been damaged in transport.  [*Id.* at ¶ 92].  On April 13, 2011, Lohr Printing filed a "Presentation of Claim for Loss and Damages" form with United and McCollister's.  [*Id.* at ¶ 95].  Despite various attempts, Lohr Printing was advised that the machine could not be repaired and was a total loss.  [*Id.* at ¶¶ 97-98].  Lohr Printing estimates the total estimated value at the time of loss was $ 251,868.00.  [*Id.* at ¶ 112].

B.  Procedural History

On August 17, 2011, United and McCollister's filed a complaint requesting a declaratory judgment capping United's liability at $13,000.00 (the value of the Printer at $5.00/lb) under the interstate Bill of Lading, and relieving McCollister's of liability pursuant to the Carmack

Amendment to the Interstate Commerce Act, 49 U.S.C. § 14706. [1].  Lohr Printing filed an answer asserting various affirmative defenses and counterclaims.  [7].  The counterclaims against United were dismissed.  [20].

Thereafter, a Joint Scheduling Order was entered on April 13, 2012.  [22].  That Order indicated that no pleadings could be amended after June 30, 2012, except with leave of the Court.  [*Id.*].  Lohr Printing filed a Substitution of Attorney on June 11, 2012, [23], and its new counsel requested and was granted an extension of 15 days (July 15, 2012) to file amended pleadings.  [26].  On July 13, 2012, with a resubmission on July 16, Lohr Printing filed an amended answer, separate defenses, counterclaim, and third party complaint naming CUSA, CFS, CBS, Ms. Loney, and Mr. Held as third party defendants.  [First Am. Third Party Compl.].

Lohr Printing's Third Party Complaint contained three counts: (1) Negligence and Breach of Contract [*id.* at ¶¶122-27]; (2) Breach of the Implied Covenant of Good Faith and Fair Dealing, and Equitable Estoppel [*id.* at ¶¶128-31]; and (3) Legal Fraud, [*id.* at 132-36].  Lohr Printing's Third Party Complaint concluded with a demand for $251,868 with interest (the then-value of the damaged Printer), a judgment declaring the lease on the subject printer null and void, a credit to Lohr Printing for payments made to CFS after the Printer's damage, and various other damages.  [*Id.*].

On August 17, 2012, CFS filed an Answer to Lohr Printing's Third Party Complaint. [39], and brought its own Third Party Complaint against Mr. Lohr, cross-claims against United, Ms. Loney, CBS, McCollister's, and Mr. Held, and a counterclaim against Lohr Printing.  [*Id.*].

On September 7, 2012, CUSA and CBS filed a Motion to Dismiss Lohr Printing's Third Party Complaint as against CUSA and CBS under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.  [45].  McCollister's subsequently filed a Motion to Dismiss Lohr

5

Printing's Third-Party Complaint and Third-Party Defendant Canon Financial Services, Inc.'s ("CFS's") Cross-Claims [39] against former McCollister's employee, Sonaie Loney ("Ms. Loney"), pursuant to Rules 12(b)(2) and 12(b)(6).  [49].  In response to this and the previous motion, Lohr Printing has cross-moved to file an Amended Counterclaim and Third Party Complaint.  [53, "Proposed Second Amd. Compl."].

C.  <u>Proposed Second Amended Third Party Complaint</u>

In the proposed Second Amended Complaint, Lohr Printing eliminates its claims against CUSA, supplements its factual allegations, and makes changes to the content and quantity of the alleged counts.  The counts, as proposed, now allege: (1) Principal/Agent Liability for the Negligence of United/McCollister's; (2) Negligence/Breach of Fiduciary Duty; (3) Promissory Estoppel; (4) Equitable Estoppel; (5) Breach of Contract; (6) Breach of Implied covenant of Good Faith and Fair Dealing; (7) Legal Fraud; (8) Consumer Fraud; and (9) Discovery Deposition as to Sonaie Loney only.  [Proposed Second Amd. Compl.].

The first eight proposed counts are brought against CFS, CBS, and Mr. Held, and the ninth count against Ms. Loney.  To support the expanded claims, Lohr Printing has elaborated on Mr. Held's involvement in shipping the Printer and included information regarding the Transportation Services Agreement ("TSA") between Canon and United.

Regarding Mr. Held's involvement, the proposed Second Amended Complaint alleges that while Mr. Held was assisting with shipment of the Printer to New Jersey, he was also helping Lohr Printing obtain a replacement printer for use in Kentucky.  [*Id.* at ¶ 70-71].  It also cites to Ms. Loney's affidavits for the proposition that the value of the Printer was never discussed with Ms. Loney during shipment.  [*Id.* at ¶ 88].  Then, after the shipped Printer was damaged, Mr. Held allegedly failed to report the damage to CFS.  [*Id.* at ¶ 134].  Moreover, Lohr

Printing asserts that although Mr. Held was familiar with the CFS lease terms requiring Lohr Printing to obtain like equipment to replace the damaged Printer, [2]  Mr. Held did not offer to Mr. Lohr the opportunity to obtain like equipment at its lowest price.  [*Id.*].  Instead, Mr. Held sold Lohr Printing a new printer to deliver to Lohr Printing's client in New Jersey.  [*Id.*].   Lohr Printing further alleges that payments for the replacement printer sent to New Jersey were not rolled into the lease payments for the damaged Printer; instead Mr. Held, CFS, CBS and Canon sought to make Lohr Printing Responsible for lease payments on both printers.  [*Id.* at 135-36].

Regarding the TSA, Lohr Printing alleges that based upon Ms. Loney's affidavits, CBS's representatives (and assumedly Mr. Held) knew McCollister's acted solely as United's disclosed household goods agent, and would include a liability limitation.  [*Id.* at ¶ 102].

CBS, CUSA, and McCollister's (on Ms. Loney's behalf), have submitted responses to Lohr Printing's proposed amendment, arguing that (1) the Court should not permit Lohr Printing to amend its complaint, as the scheduling order deadline has expired; and (2) that Lohr Printing's claims as amended should be dismissed as futile.  [54, 55].

DISCUSSION

A.  *Legal Standard*

    i.  *Motion to Dismiss*

A motion under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint.  *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993).  The defendant bears the burden of showing that no claim has been presented.  *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005).  When considering a Rule 12(b)(6) motion, a district court should conduct a three-

---

[2] The Court notes that the loss/damage provision of the attached contract provides that in the event of loss or damage, CFS *elects* whether to accept (a) like equipment in a condition acceptable to CFS, and of which clear title is conveyed to CFS; or (b) pay CFS the remaining lease balance on the damaged printer.  [Proposed Second Amd. Compl., Ex. D at ¶ 14].

7

part analysis.  *See Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).  "First, the court must

'take note of the elements a plaintiff must plead to state a claim.'"  *Id.* (quoting *Ashcroft v. Iqbal*,

56 U.S. 662, 675 (2009)).  Second, the court must accept as true all of a plaintiff's well-pleaded

factual allegations and construe the complaint in the light most favorable to the plaintiff.  *Fowler*

*v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009).  The court may disregard any

conclusory legal allegations.  *Id.*  Finally, the court must determine whether the "facts are

sufficient to show that plaintiff has a 'plausible claim for relief.'"  *Id*. at 211 (quoting *Iqbal*, 556

U.S. at 679).  Such a claim requires more than a mere allegation of an entitlement to relief or

demonstration of the "mere possibility of misconduct;" the facts pled must allow a court

reasonably to infer "that the defendant is liable for the misconduct alleged."  *Id*. at 210, 211

(quoting *Iqbal*, 556 U.S. at 678-79).

    ii.    *Motion to Amend – Rules 16(b) and 15(a)*

        Under Federal Rule of Civil Procedure 16(b)(4), a scheduling order "may be modified

only for good cause and with the judge's consent."  This is a more restrictive standard than its

Rule 15(a) counterpart, discussed below, which counsels liberal leave to amend.  Under Rule

16(b), the Court has broad "discretion in determining what kind of showing the moving party

must make in order to satisfy [the Rule]'s good cause requirement."  *Phillips v. Greben*, Civil

No. 04-5590 (GEB), 2006 WL 3069475, *6 (D.N.J. Oct. 27, 2006).  Fundamentally, whether

good cause exists depends upon the diligence of the moving party; "the moving party must show

that despite its diligence, it could not reasonably have met the scheduling order deadline."

*Hutchins v. United Parcel Service, Inc.*, No. 01 CV 1462 WJM, 2005 WL 1793695 (D.N.J. July

26, 2005).  A movant may also demonstrate good cause where it can show that its "delay in filing

the motion to amend stemmed from 'any mistake, excusable neglect or any other factor which

might understandably account for failure of counsel to undertake to comply with the Scheduling Order.'"  *Greben*, 2006 WL 3069475, *6 (quoting *Newton v. Dana Corp. Parish Division,* 1995 WL 368172, at *1 (E.D.P.A.1995)).   However, a movant must still demonstrate that amendment would not then be futile under Rule 15(a).

Under Rule 15(a), it is the accepted and encouraged policy that courts should liberally grant leave to amend pleadings when justice so requires.  *See* Fed. R. Civ. P. 15(a); *see also Foman v. Davis,* 371 U.S. 178, 182 (1962); *Dole v. Arco Chem. Co.,* 921 F.2d 484 (3d Cir. 1990).   As the Supreme Court set forth in *Foman*, when the movant's request to amend is "a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits."  *Foman,* 371 U.S. at 182.

A court may deny amendment where the moving party has acted in bad faith, with dilatory motive, or has unduly delayed amendment so as to prejudice the nonmoving party.  *See Sikirica v. Nationwide Ins. Co.*, 416 F.3d 214, 220 (3d Cir. 2005); *Lorenz v. CSX Corp.*, 1 F.3d 1406, 1414 (3d Cir. 1993)).   Leave to amend may also be denied where such amendment would be futile.  *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 236 (3d Cir. 2008) (citing *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002)).   "'Futility' means that the complaint, as amended, would fail to state a claim upon which relief could be granted."  *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000) (quoting *In re Burlington Coat Factor Sec. Lit.,* 114 F.3d 1410, 1434 (3d Cir. 1997)).   The court assesses futility under the same standard as a Rule 12(b)(6) motion to dismiss.  *Shane*, 213 F.3d at 115.

B.  *Analysis*

Because Lohr Printing's motion to amend was filed on October 2, 2012, after the July 15, 2012 scheduling order deadline, Lohr Printing must meet the good cause standard set forth in

9

Rule 16(b).  CBS, CUSA and McCollister's argue that Lohr Printing's motion to amend should

be denied, as Lohr Printing has failed to demonstrate such good cause.

While the Court is conscious of the need to enforce scheduling orders, the Court finds

that where, as here, a party diligently seeks to amend its complaint in order to avoid dismissal on

a Rule 12(b)(6) motion, that party has good cause under Rule 16(b).  *Cf. Phillips*, 515 F.3d at

236 (3d Cir. 2008) ("[I]f a complaint is vulnerable to 12(b)(6) dismissal, a district court must

permit a curative amendment, unless an amendment would be inequitable or futile.").  Here,

Lohr Printing's motion to amend is in response to two 12(b)(6) motions to dismiss filed after

expiration of the scheduling order deadline.  Lohr Printing's response was diligent: it submitted

the proposed Second Amended Complaint a mere month after the second of the above motions

issued, and less than two months after the first.  Thus, the Court finds it appropriate to permit

amendment in this case if it would not be prejudicial or futile.

As prejudice has not been argued, the Court turns to futility.  Because the inquiry for

determining the futility of amendment and a 12(b)(6) motion to dismiss are the same, the Court

will analyze the motions to dismiss and the motion to amend concurrently, beginning with the

claims against Ms. Loney.  The Court will then review the claims against CUSA and CBS.

i.      *McCollister's Motion to Dismiss the Claims and Cross-Claims against Ms. Loney*

McCollister's has moved to dismiss Lohr Printing's claims and CFS's[3] cross-claims as to

Ms. Loney,[4] on both 12(b)(6) and 12(b)(2) grounds.  McCollister's argues that even if this Court

properly has personal jurisdiction over Ms. Loney (a fact it disputes), any claims against her

---

[3] Note: In some of its subsequent submissions, McCollister's has referred to "CBS's" cross-
claims against Ms. Loney.  [*See, e.g.*, 55].  However, given the initial filing and the fact that CBS
has not filed cross-claims against Ms. Loney, the Court assumes CFS is the intended party.
[4] *See* August 17, 2012 Letter Order acknowledging United and McCollister's authorization of
their counsel to file a motion to dismiss on behalf of Sonaie Loney.  [38].

would be preempted by the ICC Termination Act of 1995 ("ICCTA"). [49]. The Court notes

that CFS has, to date, failed to file any opposition to the motion, leaving only Lohr Printing's

arguments to consider. Lohr Printing does not dispute ICCTA preemption of any claims against

Ms. Loney, [53], but instead insists upon the inclusion of Ms. Loney as a "necessary and

indispensable" party for discovery, to be dismissed prior to trial. [Proposed Second Amd.

Compl. at ¶ 220-224; 53-2 at II].

　　　In reviewing the case law, the Court finds little direct guidance in this area aside from a

handful of cases in New Jersey where, as Lohr Printing proposes, parties have been added for

discovery purposes only. *See Rubankick v. Witco Chem. Corp., et al.*, 576 A.2d 4 (N.J. Sup. Ct.

App. Div. 1990) (noting in a footnote that employer Witco was added as a party for discovery

purposes only); *Arcell v. Ashland Chem. Co., Inc., et al.*, 378 A.2d 53 (N.J. Sup. Ct. 1977)

(granting motion to add party for discovery purposes only based upon equity grounds);

*Carpenter, Bennett & Morrisey v. Jones*, 485 A.2d 316 (N.J. Sup. Ct. App. Div. 1984)

(permitting party who possessed funds subject to litigation to be named a nominal defendant);

*SEC v. Antar*, 831 F. Supp. 380 (D.N.J. 1993) (naming as nominal defendants parties who had

received profits from illegal sale of stock so they could be disgorged of their profits); *Brodsky v.

Grinnell Haulers, Inc.*, 827 A.2d 1104 (N.J. Sup. Ct. App. Div. 2003).

　　　In many of the cases relevant to this inquiry, the parties in issue were added because they

either possessed certain property or were privy to unique information necessary for the

advancement of the litigation. *See, e.g.*, *Carpenter*, 482 A.2d 316; *SEC v. Antar*, 831 F. Supp

380; *Amboy Bancorporation v. Jenkens & Gilchrist*, 02-CV-5410, 2007 WL 274683 (D.N.J.

Sept. 14, 2007) ("In some rare circumstances, a nominal defendant might be used to describe a

party joined solely because it possesses some knowledge or information that needs to be obtained

through discovery, but that party is dismissed as soon as it provides the discovery requested.").

While the Court acknowledges that circumstances may call for the naming of a so-called

"nominal" party for discovery purposes only, at best the Court finds this to be an unusual and

rare remedy in federal court.  The Court is thus hesitant to exercise this power where there is no

clear showing that the proposed nominal party *solely* possesses "knowledge of most, if not all

facts relevant to the action brought by plaintiffs," *Arcell*, 378 A.2d at 71, or otherwise is in some

possession of property or funds relevant to the action.  The Court does not believe Lohr Printing

has adequately shown that Ms. Loney is *alone* possessor of necessary information for this action,

or shown that ordinary discovery processes will be insufficient.  Given the further lack of

opposition from CFS with regards to this matter, the Court grants McCollister's motion to

dismiss all claims and cross-claims against Ms. Loney, and dismisses Lohr Printing's claims

against Ms. Loney as futile.

ii.     *CBS and CUSA's Motion to Dismiss with Respect to CUSA*

CBS and CUSA have moved to dismiss Lohr Printing's Third Party Complaint with

respect to CUSA.  [45].  Lohr Printing has stated its support for dismissal without prejudice, and

has removed CUSA from its proposed Second Amended Complaint.  The Court thus grants CBS

and CUSA's Motion to Dismiss Claims with respect to CUSA.

iii.    *CBS and CUSA's Motion to Dismiss with Respect to CBS*

In its initial motion, CBS moved to dismiss Lohr Printing's assertions of breach of

contract, breach of the implied covenant of good faith and fair dealing/equitable fraud, and legal

fraud.  After Lohr Printing moved to amend its complaint, CBS argued that the proposed

complaint (1) fails to satisfy Rule 8's requirement of a short and plain statement, (2) contains

claims previously contradicted by Lohr Printing, and (3) fails to state a claim for which relief can be granted with regards to CBS.  [54 at III.A].  The Court will thus consider each of Lohr Printing's proposed eight counts in turn.

    1)  <u>Principal/agent liability for the negligence of United Van Lines and McCollister's</u>

       Count I of the proposed Second Amended Complaint alleges that CBS is liable for damages to Lohr Printing proximately caused by United and McCollister's on a theory of principal-agent liability.  Although the existence of an agency relationship has various manifestations, the heart of such a relationship involves the control of one party over the other, to the extent that the other acts on his behalf and with his consent.  *See* Restatement (Second) of Agency § 1 (1958); *Rodriguez v. Hudson County Collision Co.*, 296 N.J. Super 213, 220 (App. Div. 1997) ("An agency relationship arises when one party authorizes another to act on its behalf while retaining the right to control and direct any such acts.").

       The Court agrees with CBS that there is inadequate support for the finding of a principal-agent relationship between CBS and United/McCollister's.  Neither the shipping contract, nor the behavior of the parties (Mr. Held *requested* and *negotiated* a shipping price with McCollister's, and Mr. Lohr provided payment and supervised the actual day of shipment) suggests the requisite exercise of control between CBS and United/McCollister's.  Thus, this Court finds that proposed Count I of the complaint fails to state a claim on which relief can be granted, and is denied as futile.

    2)  <u>Negligence/Breach of Fiduciary Duty</u>

       Count II of the proposed Second Amended Complaint asserts that Mr. Held, on behalf of CBS and CFS, acted in a fiduciary capacity for Lohr Printing in terms of assisting with the Printer's move to New Jersey, and the subsequent sale of replacement equipment when the

Printer was damaged.  From this alleged fiduciary capacity, Lohr Printing asserts that Mr. Held

owed various duties to Lohr Printing, including, *inter alia*, seeking alternate pricing at different

liability limits, informing Lohr Printing that McCollister's was an agent of United, and advising

CFS of Lohr Printing's intent to ship the Printer to New Jersey.

After careful review of the alleged facts and surrounding circumstances, the Court finds

insufficient evidence that Mr. Held served Lohr Printing in a fiduciary capacity on behalf of

CBS.  "Under New Jersey Law, a . . . fiduciary relationship encompasses all relationships '. . . in

which confidence is naturally inspired, or in fact, reasonably exists . . . ."  *Alexander v. CIGNA*

*Corp.*, 991 F. Supp. 427, 437 (D.N.J. 1998), *aff'd*, 172 F.3d 859 (3d Cir. 1998).  While "[t]here

is no invariable rule which determines the existence of a fiduciary relationship . . . there must

exist a certain inequality, dependence, weakness of age, or mental strength, business intelligence,

knowledge of the facts involved, or other conditions, giving to one advantage over the other."

*Id.* at 438.  However, "fiduciary duties are not imposed in ordinary commercial business

transactions."  *Id.* at 438 (citing *International Minerals and Min. v. Citicorp, North America,* 736

F. Supp. 587, 597 (D.N.J.1990): *see also Glenside West Corp. v. Exxon Co., U.S.A.,* 761 F. Supp.

1100, 1116 (D.N.J. 1991); *Coca–Cola Bottling Co. of Elizabethtown v. Coca–Cola Co.,* 696 F.

Supp. 57, 73 (D. Del. 1988), *aff'd,* 988 F.2d 386 (3d Cir. 1993)).

Here, while Mr. Held may have been Lohr Printing's principal representative when

purchasing and leasing a printer, there is no evidence indicating that Mr. Held did, in fact,

exercise the type of superiority and control on behalf of CBS over Lohr Printing required to

establish a fiduciary relationship.  Indeed, it appears to be a mere arms-length business

transaction, and the request for and provision of aid in shipment of the Printer appears to be an

interaction between experienced business people.  Thus, this Court finds that proposed Count II

of the complaint fails to state a claim on which relief can be granted, and is denied as futile.

   3) Promissory Estoppel

Count III of the proposed Second Amended Complaint sets forth a claim that CBS is

liable to Lohr Printing on a theory of promissory estoppel.  According to Lohr Printing, Mr. Held

"made clear and definite promises to Lohr as to how to best move [the] Printer [] to New Jersey,"

[53-2 at VIII.B], and Mr. Held should have reasonably expected Lohr Printing to rely on those

promises.  Mr. Held then breached his agreement to assist when he failed to advise Lohr Printing

that McColister's was an agent of United, that Lohr Printing was bound by the TSA with CBS

with regards to liability limits, and various other failures.

   To successfully establish a claim of promissory estoppel, a party must show

   (1) a clear and definite promise by the promisor; (2) the promise [was] made with the
   expectation that the promisee [would] rely thereon; (3) the promise [did] in fact
   reasonably rely on the promise; and (4) detriment of a definite and substantial nature
   [was] incurred in reliance on the promise.

*Aircraft Inventory Corp. v. Falcon Jet Corp.*, 18 F. Supp. 2d 409, 416 (D.N.J. 1998)(quoting

*Malaker Corp. V. First Jersey Nat'l Bank*, 395 A.2d 222, 230 (N.J. Super. Ct. App. Div. 1998).

   The Court does not believe that Lohr Printing has satisfactorily pled grounds for

promissory estoppel in this case.  First, the Court is hard-pressed to find a clear and definite

promise in the proposed Second Amended Complaint.  In paragraph 75, Lohr Printing alleges

that "Held on behalf of CBS, and presumably CFS, made a clear and definite promise that he

would assist Lohr, his longstanding customer, in properly arranging the move of [the] Printer []."

[Proposed Second Amd. Compl.].  In paragraph 77, Lohr Printing alleges that "Held represented

he would be able to advise Lohr how to move [the] Printer [] to Lohr [Printing]'s customer in

New Jersey and get what was represented to be a good price."  [*Id.*].

Even if the above assertions were more than bare-bones allegations of a clear and definite promise, the Court cannot conclude that Lohr Printing has a plausible claim for relief. "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 663-64 (citations omitted).  Based upon the facts pled, Mr. Held may have realized that Mr. Lohr would rely upon him to refer him to a shipping company, but there is little support that Mr. Held intended for Mr. Lohr to rely upon him for every aspect of the shipping, and to make all relevant inquiries.  Mr. Held did not finalize shipping by providing payment on behalf of Mr. Lohr, and he did not supervise the shipping.  Even if Mr. Held neglected to inquire as to liability limits and provide that information to Mr. Lohr, Mr. Lohr still had opportunity to ask further follow up questions.  Such extensive reliance by Lohr Printing on Mr. Held's promise to assist in moving the Printer does not seem reasonable.  Thus, the Court denies Count III of the proposed Second Amended Complaint as futile.

4)   Equitable Estoppel

Proposed Count IV alleges that CBS should be responsible for damages incurred by Lohr Printing, or should otherwise pay CFS all monies owed under lease based upon a theory of equitable estoppel.  The doctrine of equitable estoppel is applied "only in very compelling circumstances, where the interests of justice, morality and common fairness clearly dictate that course."  *Phillips v. Borough of Keyport*, 107 F.3d 164, 182 (3d Cir. 1997) (internal quotations omitted) (quoting *Palatine I v. Planning Bd. of Township of Montville,* 133 N.J. 546, 628 A.2d 321, 328 (1993)).  In order to support a claim of equitable estoppel,

> [T]he claiming party must show that the alleged conduct was done, or representation was made, intentionally or under such circumstances that it was both natural and probable that it would induce action.  Further, the conduct must be relied on, and the relying party must act so as to change his or her position to his or her detriment.

*Id.* (citing *Miller v. Miller,* 97 N.J. 154 (1984)).  The reliance must be in good faith.  *Id.* (citing *Lizak v. Faria*, 96 N.J. 482 (1984)).

Lohr Printing asserts that based upon Mr. Held's representations and conduct, Lohr Printing did not make further inquiry into (1) whether McCollister's was an agent of United, (2) liability limits that would apply to the Printer's transport, (3) the relevant particulars of the TSA, (4) whether Lohr Printing would need to independently advise CFS that the Printer was being shipped by McCollister's, and (5) whether Lohr Printing would be better off ordering a new printer to give to its New Jersey customer, instead of sending its own printer and being held liable for shipment.  Lohr Printing concludes this list with the further assertions that Mr. Held failed to report the loss of the Printer to CFS, and that Mr. Held, CFS, and CBS sought to make Lohr Printing responsible for lease payments on both the damaged Printer and the printer purchased by Lohr Printing to replace it.

The Court acknowledges that while Lohr Printing may have a claim against CFS for equitable estoppel under the First Amended Complaint (insofar as Mr. Held, as an alleged agent for CFS, may have been obligated to inform CFS of the damage), the Court does not believe Lohr Printing has sufficiently compelling grounds to bring a claim of equitable estoppel against CBS.  Despite Mr. Held's promise to assist Mr. Lohr in shipping the Printer, neither Mr. Held nor CBS agreed to be responsible for shipment.  Mr. Lohr had direct contact with Ms. Loney (McCollister's representative) when he gave her his credit card information, and had direct contact with a United driver and the Bill of Lading when said driver came to pick up the Printer. Any relevant omission with respect to liability limits was not at those moments the result of CBS's actions.  Thus, proposed Count IV as concerns CBS is dismissed as futile.

17

5) <u>Breach of Contract</u>

In proposed Count V of the Second Amended Complaint, Lohr Printing asserts that CBS, along with Mr. Held and CFS, are liable for all proximately caused damages via breach of contract. The relevant contracts described therein are the CBS maintenance agreement and an alleged oral agreement between Mr. Held and Lohr Printing concerning shipment of the Printer. As for the former, the Court finds no evidence that CBS breached its maintenance contract with Mr. Held's offer of assistance in securing Printer shipment, as CBS itself did not ship the Printer.

As for the latter, the Court finds that Lohr Printing has failed to adequately plead the existence of an oral contract. The touchstones of whether a contract exists are mutual assent and consideration. While Lohr Printing asserts that Mr. Held received consideration for assisting in Printer shipment via the increased commission and sales that would result from Lohr Printing's need to replace the shipped printer with a new machine, the Court does not find this to be actual consideration as pled. "[C]onsideration must . . . be valuable in the sense that it is something that is bargained for in fact." *Borbely v. Nationwide Mut. Ins. Co.*, 547 F. Supp. 959, 980 (D.N.J. 1981) (citing 1 Corbin on Contracts § 131 (1963)). Here, Lohr Printing has not shown that bargained for exchange. As CBS points out: whether or not Lohr Printing shipped its current printer to New Jersey and purchased a replacement, or purchased a new printer to send to its customer in New Jersey, Mr. Held would receive the benefit of a sale. The pleading does not support any additional negotiated benefit on the part of Mr. Held. Thus, the Court finds proposed Count V to be futile with respect to CBS, and grants CBS's motion to dismiss.

6) <u>Breach of the Implied Covenant of Good Faith and Fair Dealing</u>

Proposed Count VI of the Second Amended Complaint alleges liability on the part of CBS based upon a breach of the implied covenant of good faith and fair dealing. In New Jersey,

18

"every party to a contract is bound by a duty of good faith and fair dealing in both the performance and enforcement of the contract." *Hassler v. Sovereign Bank*, 644 F. Supp. 2d 509, 518 (D.N.J. 2009) (quoting *Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Ctr. Assocs.*, 182 N.J. 210, 224 (2005)) (internal citations omitted). "[A] contract must exist between two parties before a court will infer this covenant." *Grygorcewicz v. Schweitzer-Mauduit Int'l, Inc.*, CIV A 08-CV-4370 FLW, 2009 WL 235623, at *2 (D.N.J. Jan. 30, 2009).

First, Lohr Printing appears to assert that an implied covenant of good faith and fair dealing arose from the alleged oral contract discussed previously between Mr. Held and Lohr Printing. Given that the Court finds there to be no enforceable oral contract between Mr. Held and Lohr Printing, the Court will disregard this argument.

Alternatively, Lohr Printing argues that Mr. Held, CBS, and CFS *by their conduct* breached the implied covenant of good faith and fair dealing when they failed to disclose, *inter alia*, that McCollister's was an agent of United, applicable liability limits, and Lohr Printing's duty to independently advise CFS of its intent to ship the Printer if notice to Mr. Held was insufficient. Lohr Printing also alleges a breach where the parties' conduct post damage of the Printer included a failure to (1) roll payments for the replacement printer into payments otherwise due on the damaged Printer, and (2) give Mr. Lohr the opportunity to replace the damaged Printer with less expensive used reconditioned equipment. Finally, Lohr Printing alleges a breach by CBS and CFS when Mr. Held failed to advise Lohr Printing that instead of shipping its own printer, Lohr Printing could purchase a printer to be shipped directly to New Jersey, such that Canon would bear the cost and expense of any damage.

Since the above claims must be analyzed in relation to a contract, the Court considers them in the context of the CBS maintenance agreement, and finds the alleged actions did not

violate the spirit of that document.  While there is perhaps some argument that CFS has breached its implied covenant of good faith and fair dealing in terms of its lease agreement through Mr. Held's conduct, the Court finds that proposed Count VI as against CBS is futile as amended.

7) <u>Legal Fraud</u>

In proposed Count VII of the Second Amended Complaint, Lohr Printing alleges that CBS, CFS, and Mr. Held engaged in legal fraud when, with an intent to obtain an unfair advantage on Lohr Printing in the event the Printer was damaged in transport and to receive increased sales and monthly lease payments, they breached their duty to advise Lohr Printing of certain material facts, concerning, among other things, whether McCollister's was an agent of United, the liability limitations of the TSA agreement, and Lohr Printing's duty to investigate further liability and shipping options.  Lohr Printing alleges that as a direct and proximate result of these omissions, Lohr Printing chose to ship the Printer with McCollster's, and that, after the Printer was damaged, Mr. Held failed to alert CFS of said damage such that Lohr Printing was forced to make lease payments on both the machine it purchased to replace the damaged Printer and the damaged Printer itself.

In New Jersey, a party wishing to succeed on a claim of legal fraud must show proof that "the defendant made (1) a material misrepresentation of present or past fact (2) with knowledge of its falsity (3) with the intention that the other party rely thereon (4) and which resulted in reasonable reliance by plaintiff."  *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1182 (3d Cir. 1993) (citing *Jewish Ctr. of Sussex County v. Whale,* 86 N.J. 619, 432 A.2d 521, 524 (1981)).  "A plaintiff asserting a claim of legal fraud must show that the defendant acted with scienter but only need prove the elements of fraud by a preponderance of the evidence."  *Id.*

As an initial matter, the Court is unconvinced that Lohr Printing has sufficiently pled scienter on the part of CBS.  Lohr Printing argues that scienter may be shown by CBS's failure to propose directly shipping a *new* printer to New Jersey when Lohr Printing first approached Mr. Held with the idea of shipping the Printer, thus assuming liability for the risk of transport itself.  Lohr Printing also argues that CBS hoped to capitalize on any damage that might result from the shipment by selling an additional printer to Lohr Printing.  The Court finds the former point moot, as CBS would have had to assume liability for at least one printer shipment regardless of whether Lohr Printing ordered a printer for direct shipment to its customer in New Jersey, or sent the customer its own printer and then purchased a replacement.  As concerns the latter, the Court finds this too uncertain an outcome to support an assertion of scienter.

Additionally, the Court does not find that Lohr Printing has sufficiently argued any material misrepresentation by omission so as to constitute fraud, either before or after the Printer was damaged.  Thus, the legal fraud claim against CBS is dismissed as futile.  The Court declines to consider here whether there may be a valid fraud claim against CFS based upon Mr. Held's failure to alert CFS of Lohr Printing's intent to ship the Printer and its ensuing damage.

8) Consumer Fraud

Lohr Printing attempts to hold CBS liable under the Consumer Fraud Act, N.J.S.A. 56:8-1 et seq. ("CFA"), by claiming that the shipment was performed in connection with the sale, rental, distribution, or advertisement of merchandise.  [53 at ¶ 215].  Lohr Printing further argues that a consumer fraud claim attaches because Mr. Held sold Lohr Printing a printer to replace the one damaged in transit that allegedly was not "like equipment" at the lowest possible price.  To state a consumer fraud claim, a complainant must allege three elements: "(1) unlawful conduct, (2) an ascertainable loss, and (3) a causal relationship between the defendant's unlawful conduct

21

and the plaintiff's ascertainable loss." *Int'l Union of Operating Engineers Lcoal No. 68 Welfare Fund v. Merck & Co., Inc.*, 192 N.J. 372 (2007) (internal citations omitted).

Here, the Court does not find the pleadings sufficient to support the application of the CFA to CBS, insofar as Mr. Held's initial assistance with securing the price quote and ultimate shipment by McCollister's was not done in conjunction with the sale/rental/distribution of a printer, and the further lack of any evidence that Mr. Held's failure to provide like equipment at the lowest possible price for a replacement printer constituted unlawful conduct. Thus, the Court finds that the consumer fraud claims against CBS should be dismissed as futile.

CONCLUSION

For the foregoing reasons, McCollister's Motion to Dismiss all Claims and Cross-Claims against Sonaie Loney is granted. Given that the Court has found all proposed counts as against CBS and CUSA to be futile, and that Lohr Printing's proposed Second Amended Complaint included the three counts present in the previous complaint, the Motion to Dismiss All Claims with respect to CUSA and CBS is granted. Finally, as Lohr Printing's Motion to Amend was brought outside of the scheduling order in response to the above motions to dismiss, and the above motions to dismiss have been granted, Lohr Printing's Motion to Amend its Counterclaim and Third Party Complaint is denied. An appropriate order follows.


 /s/ Anne E. Thompson
ANNE E. THOMPSON, U.S.D.J.


Dated:     January 29, 2013