NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

UNITED VAN LINES, LLC, et al.,

Plaintiffs,

v.

LOHR PRINTING, et al.,

Defendants.

Civ. No. 11-4761

OPINION

THOMPSON, U.S.D.J.

    This matter comes before the Court upon the motion of Plaintiffs United Van Lines, LLC ("United") and McCollister's Transportation Services, Inc. ("McCollister's") for summary judgment. (Doc. No. 101). Defendant Lohr Printing, Inc. ("Lohr Printing") and Third Party Defendant Canon Financial Services, Inc. ("CFS") oppose the motion. Lohr Printing has also filed a motion for a continuance pending additional discovery under Federal Rule of Civil Procedure 56(d). The Court has issued the Opinion below based upon the written submissions of the parties and oral argument. (Doc. Nos. 101, 117, 119, 122, 123, 124, 125, 126, 127, 130). For the reasons stated herein, the Court will grant Plaintiffs' motion for summary judgment, (Doc. No. 101), and will deny Lohr Printing's motion for a continuance, (Doc. No. 117).

BACKGROUND

    This matter stems from damage caused to a leased printer during transit from Kentucky to New Jersey.

    Lohr Printing is in the business of making textbook covers. (Doc. No. 101-1, Plaintiffs' Statement of Material Facts, at ¶ 7; Doc. No. 30 at ¶ 50). Richard C. Lohr, Jr.

1

("Mr. Lohr") is the president of Lohr Printing. (Doc. No. 30 at ¶ 50; Doc. No. 117-3, Lohr Printing's Statement of Material Facts, at ¶ 63). In the course of its business, Lohr Printing leased a Canon Image Press 60000 VP-4, Serial Number CWM00081 (the "Printer") under a Canon Business Solutions ("CBS") service contract in April 2009; the Printer was leased through and owned by CFS. (Doc. No. 101-1 at ¶¶ 8, 12-13; Doc. No. 117, Lohr Printing's Statement of Material Facts, at ¶¶ 8, 12-13). The agreement between CFS and Lohr Printing states that Lohr Printing "shall not move the Equipment from the location . . . except with the prior written consent of CFS." (Doc. No. 117-3 at ¶ 75).[1]

In 2011, Mr. Lohr contacted Rodney Held, a CBS employee, and advised him that the Printer "needed" to be relocated to Hightstown, New Jersey.[2] (Doc. No. 117-3, Lohr Printing's Statement of Material Facts, at ¶ 14). Lohr Printing had previously dealt exclusively with Held when purchasing equipment from CBS and leasing from CFS. (*Id*. at ¶ 66). Held offered to assist in the move and advised Lohr Printing that Canon companies often used McCollister's, a company that was experienced in dealing with this type of equipment. (Doc. No. 117-3, Lohr Printing's Statement of Material Facts, at ¶¶ 15, 16; Doc. No. 101-1 at ¶¶ 15, 16).

Held also stated that he could get Lohr Printing a good price on the shipment. (Doc. No. 101-1 at ¶ 16). During February and March of 2011, Held engaged in

---

[1] Prior to this transaction, Lohr Printing had purchased several other printing items from CBS and CFS. (Doc. No. 101-1 at ¶ 65).

[2] Defendant Lohr Printing contends that Held was also an agent or employee of CFS. (Doc. No. 117-3). However, this issue of fact is not material for the purposes of this motion.

conversations with a representative of McCollister's. (Doc. No. 101-1 at ¶ 18). On February 16, 2011, Held called McCollister's representative and informed her that the Printer was valued at between $250,000 and $300,000. (Doc. No. 101-1 at ¶ 20).[3] The representative also told Held that the Printer did not need to be packaged for shipment in a special way; instead, she stated that the Printer only needed to be broken down and shipped in pieces. (Doc. No. 117-3 at ¶ 22). After the call, McCollister's representative sent an email quoting the transportation charge at $795.72, a 57% "discount." (*Id*. at ¶ 22; Doc. No. 117-3 at ¶ 22).

In mid-March of 2011, Mr. Lohr decided that he wanted the Printer delivered to New Jersey by April 4, 2011. (Doc. No. 101-1 at ¶ 23). Lohr Printing asked Held to "try to get a better shipping rate" than the $795.72 value. (Doc. No. 117-3 at ¶ 6). On March 14, 2011, Held called McCollister's to request a lower price for the shipment. (Doc. No. 101-1 at ¶ 25). On March 15, 2011, McCollister's sent an email to Held with a quote of $669.00; McCollister's representative informed Held that this 65% discount was the "highest discount [she] can give at this time." (*Id*. at ¶ 27). Mr. Lohr told Held that he accepted the $669.00 price, and Held notified McCollister's on March 16, 2011 that Mr. Lohr had accepted the quote. (*Id*. at 28; Doc. No. 117-3 at ¶ 28). McCollister's contacted Mr. Lohr and advised him that he had to either pay in advance or pay at pickup by certified check. (Doc. No. 117-3 at ¶ 85). Lohr Printing responded by sending an email with credit card information in order to pay the $669.00 charge. (Doc. No. 101-1 at ¶ 29).

---

[3] During that call, the representative did not specifically state that McCollister's would limit its liability to more or less than that amount. (Doc. No. 101-1 at ¶ 20).

On March 29, 2011, a vehicle bearing United's markings arrived at Lohr Printing's facility. (Doc. No. 101-1 at ¶ 32; Doc. No. 117-3 at ¶ 32). At the time of pick-up, Mr. Lohr received the "UVL Bill of Lading No. 18-2875-1." (Doc. No. 101-1 at ¶ 33; Doc. No. 117-3 at ¶ 33). Mr. Lohr signed the Bill of Lading in two places. (Doc. No. 117-3 at ¶ 34). There is a factual dispute as to whether Mr. Lohr signed the Bill of Lading before or after the Printer was loaded into the truck. (*Compare id. with* Doc. No. 101-1 at ¶ 43). Mr. Lohr claims that he signed the Bill of Lading believing it was "simply a receipt indicating that the equipment was picked up" and had "no idea that [he] was signing anything that limited the shipper[']s liability." (Doc. No. 117-3 at ¶ 37; *Id.* at ¶ 97-100).

Mr. Lohr's signature first appears in the the "Carrier Liability" section of the Bill of Lading. (Doc. No. 101-1 at ¶ 51). This section states that Lohr Printing agreed to limit the carrier's liability to $5.00 per pound. (*Id*. at ¶ 43).[4]

The reverse side of the Bill of Lading further states, in relevant part:

> The following Contract Terms and Conditions apply to services performed by Carrier in addition to all other rules, regulations, rates and charges in the Carrier's current rate schedule or tariff which are referenced on the front of this Bill of Lading. A copy of the applicable schedule or tariff shall be made available to the consignor, or consignee and/or shipper upon request.
>
> Carrier maintains tariffs . . . which set forth the terms, conditions and prices for the transportation services it provided. The applicable tariff . . . are incorporated herein by reference . . . Incorporated provisions include, but are not limited to: (1) Establishing the limitation of Carrier's liability . . .

---

[4] "The shipper declares value of property to be $5.00/LB and hereby releases and limits value and liability subject to the contract terms and conditions of the reverse hereof, in addition to all other limitations, rules, regulations, rates and charges in the carrier's applicable tariffs or rate schedules which are referred herein." Doc. No. 101-1 at ¶ 39.

> SECTION 3: The liability of Carrier . . . for physical loss or damage . . . shall be subject to the limitations of liability set forth in the Bill of Lading, the limitations of liability contained in any written, signed account contract and the rules, regulations, rates, charges and provisions of the Carrier's currently applicable tariffs and/or rate schedule reference on the front of this Bill of Lading.

(*Id*. at ¶ 50).

The right-hand side of the Carrier Liability section also states that the "Tariff/Rate Schedule" is "305B." (*Id*. at ¶ 47). United's Tariff UVLN Schedule No. 305-B states that UVLN, the abbreviation for United Van Lines, is the interstate motor carrier of the goods at issue. (Doc. No. 101-1 at ¶ 48-50). The "BILL OF LADING AND RATES" section of the Tariff states that shipments are "offered for . . . transportation . . . at a released value not exceeding $5.00 per pound, per article." (*Id*. at ¶ 52). The "RELEASED VALUE (DECLARATION OF VALUE – LIABILITY LIMITATION)" similarly states that "[u]nless the shipper or consignee elects a different released value level, the basic released value level applicable to shipments under this Tariff is a released value of $5.00 per pound per article." (*Id*. at ¶ 53). Tariff UVLN Schedule No. 305-B also states that Lohr Printing could declare a level of liability in excess of the $5.00 default liability for an additional charge of $.50 per $100 of increased valuation. (Doc. No. 101, Exhibit 1, at 6).

Mr. Lohr's signature also appears in the Bill of Lading above the "Consigner's Signature" section. After the document was signed, the Printer was taken from the Kentucky location and damaged in transit to New Jersey. Plaintiffs instituted the present action and now move this Court to grant summary judgment with respect to each plaintiff's liability.

DISCUSSION

*1. Legal Standard*

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In deciding a motion for summary judgment, a court must construe all facts and inferences in the light most favorable to the nonmoving party. *See Boyle v. County of Allegheny Pennsylvania,* 139 F.3d 386, 393 (3d Cir. 1998). The moving party bears the burden of establishing that no genuine issue of material fact remains. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23 (1986). "[W]ith respect to an issue on which the nonmoving party bears the burden of proof [. . .] the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

If the moving party meets its threshold burden, the opposing party must present actual evidence that creates a genuine issue as to a material fact for trial. *Anderson v. Liberty Lobby,* 477 U.S. 242, 248 (1986); *see also* Fed.R.Civ.P. 56(c) (setting forth types of evidence on which nonmoving party must rely to support its assertion that genuine issues of material fact exist). The non-movant's burden is rigorous: it "must point to concrete evidence in the record;" mere allegations, conclusions, conjecture, and speculation will not defeat summary judgment. *Orsatte v. N.J. State Police,* 71 F.3d 480, 484 (3d Cir. 1995); *Jackson v. Danberg,* 594 F.3d 210, 227 (3d Cir.2010) (citations omitted) ("[S]peculation and conjecture may not defeat summary judgment."). "[U]nsupported allegations [. . .] and pleadings are insufficient to repel summary judgment." *Schoch v.*

6

*First Fid. Bancorporation,* 912 F.2d 654, 657 (3d Cir. 1990); *see also Gleason v. Norwest Mortg., Inc.,* 243 F.3d 130, 138 (3d Cir. 2001) ("A nonmoving party has created a genuine issue of material fact if it has provided sufficient evidence to allow a jury to find in its favor at trial.").

    2. *Analysis*

Plaintiffs filed this motion for summary judgment, moving this Court to: "(1) declare that Plaintiff United's maximum liability to Lohr Printing is limited to the $5.00 per pound calculation set forth in the Bill of Lading; (2) declare that Plaintiff McCollister's has no liability to Lohr Printing or, alternatively, that its liability is limited by the $5.00 per pound calculation set forth in the Bill of Lading; (3) dismiss Lohr Printing's Counterclaim against both Plaintiffs; and (4) dismiss CFS's Cross-claims against both Plaintiffs." (Doc. No. 101).

    a. <u>United's Liability</u>

United contends that its liability for the Printer is limited by the Bill of Lading to $5.00 per pound.

Section 14706(c)(1)(A) of the Carmack Amendment allows an interstate motor carrier to limit its liability to a value established by a written declaration or agreement of the shipper.[5] *See Emerson Elec. Supply Co. v. Estes Express Lines Corp.*, 451 F.3d 179, 187-88 (3d Cir. 2006); *American Cyanamid Co. v. New Penn Motor Express, Inc.*, 979 F.2d 310, 313 (3d Cir. 1992). A bill of lading is a contractual agreement that binds both

---

[5] The Carmack Amendment, 49 U.S.C. Sect. 14706, governs Defendant Lohr Printing's claims with respect to the Printer. (Doc. No. 20 at 7).

7

the shipper and the carrier to its terms and conditions. *Texas and Pacific Railway Co. v. Leatherwood*, 250 US. 478, 481 (1991).

> A party seeking to enforce a bill of lading must meet the following five requirements:
>
> (1) maintain a tariff within the prescribed guidelines of the Interstate Commerce Commission; (2) obtain the shipper's agreement as to [the shipper's] choice of liability; (3) give the shipper a reasonable opportunity to choose between two or more levels of liability; and (4) issue a receipt or bill of lading prior to moving the shipment.

*Emerson Elec. Supply Co. v. Estes Express Lines Corp.*, 451 F.3d 179, 186 (3d Cir. 2006); *Hughes v. United Van Lines, Inc.*, 829 F.2d 1407 (7th Cir. 1987).

The fifth requirement is that the carrier must, "on request of the shipper," provide "a written or electronic copy of the rate classification rules and practices." 49 U.S.C. Sect. 14706(c)(1)(B); *id*. at Sect. 13702 (c)(1) (carrier's tariff "must be . . . made available for inspection by Shippers upon request"). However, if the shipper fails to request the tariff or any other rules, the carrier has no obligation to present the shipper with the tariff. *See Emerson Electric Supply Co. v. Estes Express Lines Corp.*, 451 F.3d 179, 187 n. 6 (3d Cir. 2006) (carriers must "provide to the shipper, on the request of the shipper, . . ."); H.R. Conf. Rep. No. 104-422, at 223 (1994) ("This provision is intended to return to the . . . situation where shippers were responsible for determining the conditions imposed on the transportation of a shipment."); *OneBeacon Ins. Co. v. Haas Indus., Inc.*, 634 F.3d 1092, 1100 (9th Cir. 2011) (citing *Sassy Doll Creations, Inc. v. Watkins Motor Lines, Inc.,* 331 F.3d 834, 841 (11th Cir. 2003)) ("carrier is now required to provide a shipper with the carrier's tariff if the shipper requests it").

Here, the record shows that Plaintiff United has complied with the applicable requirements for limiting liability through a valid bill of lading.

As an initial matter, the carrier must maintain a tariff within the prescribed guidelines of the Interstate Commerce Commission. Plaintiff United has shown that it has maintained a tariff and has submitted the tariff with this motion. Lohr Printing contends that an issue of material fact exists as to the validity of this tariff. However, it has failed to carry its burden as a non-movant to identify, with sufficient specificity, what issues exist or why the tariff might be invalid. Lohr Printing had an opportunity throughout the discovery process to investigate the tariff's status and its compliance with the Interstate Commerce Commission.

Next, United must show that it obtained the shipper's agreement as to the choice of liability. Here, there is no dispute that Lohr Printing's President, Mr. Lohr, signed the Bill of Lading, which stated that United's liability for the shipment was limited to $5.00 per pound and which also referenced the applicable tariff. Lohr Printing contends that these two signatures do not constitute a sufficient agreement on the grounds that Mr. Lohr was mistaken as to the legal significance of the document. According to Lohr Printing, Mr. Lohr merely thought the paper was a receipt and, based upon his relationship and dealings with McCollister's, CFS, and CBS, he did not believe that he needed to take additional steps to verify that the document was not a contract.

"Where a party affixes his signature . . . a presumption arises that he . . . read, understood and assented to its terms and will not be heard to complain that the effect of the act of signing was not comprehended." *Borbely v. Nationwide Mut. Ins. Co.*, 547 F.Supp. 959, 977 (D.N.J. 1981). A shipper who signs a valid bill of lading is "conclusively presumed" to know the terms set out in the bill of lading and any incorporated or referenced tariff. *Am. Railway Exp. Co. v. Daniel*, 269 U.S. 40 (1925);

*Hughes v. United Van Lines, Inc.*, 829 F.2d 1407, 1416 (7th Cir. 1987)("If the contract imports on its face to be a complete expression of the whole agreement, it is presumed that the parties introduced into it every material item, and parole evidence cannot be admitted to add another term to the agreement.").

Therefore, the record shows that no reasonable jury could find that the two signatures on the Bill of Lading did not constitute agreement to the terms as they are expressed in the signed Bill of Lading.

Next, Lohr Printing argues that it did not receive a "reasonable opportunity" to choose between two or more levels of liability. In this case, Held, on behalf of Lohr Printing, negotiated different shipping rates and values prior to the shipment. These values were communicated to Defendant Lohr Printing, who eventually approved the 65% discounted rate of $669.00. At the time of shipping, Mr. Lohr was given the Bill of Lading, which contained a section entitled "Carrier Liability." This section of the document stated that Lohr Printing was choosing the $5.00 per pound liability limitation. Mr. Lohr signed that section of the agreement and did not dispute the $5.00 per pound amount. Furthermore, Tariff UVLN Schedule No. 305-B also stated that the shipper could choose to declare a level of liability in excess of the $5.00 per pound default liability for an additional charge of $.50 per $100 of increased valuation. (Doc. No. 101, Exhibit 1, at 6).

Defendant Lohr Printing also claims that any opportunity to choose levels of liability during pickup was unreasonable because the Printer was already loaded by the time Mr. Lohr signed and received the Bill of Lading. The mere fact that the Printer may have been already loaded in the truck and was ready for shipment does not make the

opportunity at the time of pick up unreasonable.  Mr. Lohr was free to contact a representative of McCollister's or United at any time prior to the transaction or at the time of pickup.  Mr. Lohr was also free to request additional time to review the document or to simply refuse to ship the Printer until he was satisfied with the document.  Furthermore, Mr. Lohr is the President of Lohr Printing and had the experience and business acumen to seek and obtain a discounted shipping price; he is not a residential shipper or a person with no business experience or understanding.

For the reasons stated above, no reasonable jury could find in Defendant Lohr Printing's favor with respect to this issue.

Next, there is no dispute that the Bill of Lading was issued prior to the Printer's leaving the Kentucky location.  Therefore, United satisfied the fourth requirement.

Finally, Defendant Lohr Printing argues that United was required to show Lohr Printing the tariff prior to shipping.  A carrier must show the tariff to the shipper only if the shipping party requests the tariff.  *See Emerson Electric Supply Co.*, 451 F.3d at 187 n. 6 (carriers must "provide to the shipper, on the request of the shipper . . .").  Here, Lohr Printing contends that a reasonable jury could find that the tariff was requested in the February 16, 2011 phone call in which Held asked for a price quote and advised McCollister's that the Printer was valued in the $250,000 to $300,000 range.  (Doc. No. 117 at 17).  Lohr Printing fails to allege or show that this range was contained in any written agreement, as required by statute.  *See* 49 U.S.C.A. § 14706 (c)(1)(A)("the liability of the carrier for such property is limited to a value established by written or electronic declaration of the shipper or by written agreement between the carrier and shipper if that value would be reasonable under the circumstances surrounding the

transportation"); 49 U.S.C.A. § 14706 (f)(1) ("liability of the carrier for that property is limited to a value established by written declaration of the shipper or written agreement"). Moreover, a $50,000 range of values is too imprecise to qualify as a "value" upon which a specific shipping rate or liability quote can be given.

For the reasons stated above, United's liability in this matter is limited to $5.00 per pound pursuant to the Bill of Lading. *See George N. Pierce Co. v. Wells Fargo & Co.*, 236 U.S. 278, 284 (1915) ("The valuation declared or agreed upon as evidenced by the contract of shipment upon which the published tariff is applied, must be conclusive in an action to recover for loss . . ."); *Hart v. Pennsylvania R.R. Co.*, 112 U.S. 331, 340 (1884) ("There is no justice in allowing the shipper to be paid a large value for an article which he has induced the carrier to take at a low rate of freight on the assertion and agreement that its value is a less sum than that claimed.").

b. McCollister's Liability as a Household Goods Agent

McCollister's contends that the Carmack Amendment "extinguishes" its liability for the damaged shipment because it is a household goods agent.

49 U.S.C. Section 13970 "makes a motor carrier liable for the acts or omissions of its household goods agents 'which relate to the performance of household goods transportation services . . . and which are within the actual or apparent authority of the agent from the carrier or which are ratified by the carrier.'"[6] This section also "simultaneously relieves the carrier's agents of any liability, provided the transaction

---

[6] "Each motor carrier providing transportation of household goods shall be responsible for all acts or omissions of any of its agents which relate to the performance of household goods transportation services (including accessorial or terminal services) and which are within the actual or apparent authority of the agent from the carrier or which are ratified by the carrier." 49 U.S.C. § 13907(a).

12

occurred pursuant to a valid bill of lading." *Parramore v. Tru-Pak Moving Sys. Inc.*, 286 F.Supp. 2d 643, 649 (M.D.N.C. 2003); *See, e.g., Werner v. Lawrence Transportation Systems, Inc.,* 52 F.Supp.2d 567, 568–69 (E.D.N.C. 1998) ("[n]ot only does the statutory language impose liability on a motor carrier for the acts and omissions of the carrier's agent, but case law holds that the agent of a disclosed principal cannot be held liable pursuant to a duly issued bill of lading contract")(*citing Atlantic & Gulf Stevedores, Inc. v. Revelle Shipping Agency, Inc.,* 750 F.2d 457, 458 (5th Cir. 1985)); *Marks v. Suddath Relocation Sys., Inc.*, 319 F. Supp. 2d 746, 752 (S.D. Tex. 2004)(carrier is liable and agent has no independent liability).

In order to be relieved of liability pursuant to this section, the party must show that it is: (1) a household goods agents; (2) acting within the actual or apparent authority given by the carrier or ratified by the carrier; (3) pursuant to a valid bill of lading. *See* 49 U.S.C. Section 13907.

    a.   "Household goods"

Under Section 13907(e), office equipment qualifies as "household goods." *See Trepel v. Roadway Express, Inc.*, 266 F.3d 418, 423 (6th Cir. 2001) superseded by *Osman v. Intern. Freight Logistics, Ltd.*, 405 Fed. Appx. 1991 (6th Cir. 2001); *Central & Southern Motor Freight Tariff Ass'n v. U.S.*, 757 F.2d 301, 328 (D.C. Cir. 1985); 49 U.S.C.A. § 14302 (West)("The term 'household goods' has the meaning such term had under section 10102(11) of this title, as in effect on December 31, 1995.").

Here, the Printer is a piece of office equipment.[7] Therefore, the "household goods" requirement is satisfied.

### b. Actual or apparent authority

Under Section 13907(a), the agent's actions must be "within the actual or apparent authority of the agent from the carrier or which are ratified by the carrier." Ratification allows a principal to be bound by an agent's unauthorized prior act if the principal knows about it and fails to take affirmative steps to disavow the act. *City of Philadelphia v. One Reading Ctr. Associates*, 143 F. Supp. 2d 508, 520 (E.D. Pa. 2001); *see also* Bromberg and Ribstein on Partnership § 4.03(d)(2) at 4:66 ("Ratification requires an 'affirmance' of an earlier unauthorized act by partners who would have had the authority to bind the partnership in the first instance. An affirmance includes any conduct manifesting consent to be bound by the transaction.").

Here, the record shows that United was the motor carrier and principal. McCollister's made arrangements with Lohr Printing concerning the shipment of the Printer to New Jersey. United ratified McCollister's conduct by actually shipping the item over which McCollister's had made arrangements with Lohr Printing. The record also shows that McCollister's, the agent named in the Bill of Lading, had at least the apparent authority of United in this instance and was listed as the agent on the Bill of Lading.

### c. Valid Bill of Lading

For the reasons set forth above, the Bill of Lading is valid. Moreover, Defendant Lohr Printing asserted counterclaims under the Bill of Lading. *See* Doc. No. 53 (Lohr alleges

---

[7] Defendants Lohr Printing and CFS do not argue that the Printer is not a piece of office equipment.

that it complied with the "terms of the bill of lading" and that United and McCollister's breached the covenant of good faith and fair dealing implied in the Bill of Lading). A party suing under a bill of lading consents to and is bound by the terms of the bill of lading. *See A.P. Moller-Maersk A/S v. Comercializadora de Calidad S.A.*, 429 F. App'x 25, 28 (2d Cir. 2011); *Mitsui & Co., Inc. v. MIRA M/V* , 111 F.3d 33, 36 (5th Cir. 1997) ("the district court did not err in determining that, by filing a lawsuit for damages under the bill of lading, [the shipper] has accepted the terms of the bill of lading . . .").

For the reasons set forth above, McCollister's acted as a household goods agent for United with respect to the transaction at issue and the Bill of Lading is valid. Accordingly, United is liable for the actions of McCollister's, subject to the liability scheme set forth in the Bill of Lading, and McCollister's has no independent liability.

c. <u>Lohr Printing's Claims for Breach of Contract and Breach of the Implied Covenant of Good Faith and Fair Dealing Against McCollister's</u>

Plaintiff McCollister's claims that the state law counterclaims brought by Defendant Lohr Printing are preempted by the Carmack Amdendment.

The Carmack Amendment preempts "state law claims, whether they contradict or supplement Carmack Amendment remedies." *Parramore v. Tru-Pak Moving Sys., Inc.*, 286 F. Supp. 2d 643, 648 (M.D.N.C. 2003). Therefore, the shipper cannot bring state law claims against the carrier for violations relating to the damaged shipment. *Adams Express Co. v. Croninger*, 226 U.S. 491, 505-06 (1913) ("Almost every detail of the subject is covered so completely that there can be no rational doubt but that Congress intended to . . . supersede all state regulation with reference to it."); *Shao v. Link Cargo (Taiwan) Ltd.*, 986 F.2d 700, 706 (4th Cir. 1993) (the "Carmack Amendment was intended by Congress to create a national uniform policy regarding the liability of carriers

15

under a bill of lading for goods lost or damaged in shipment. Allowing a shipper to bring common law breach of contract or negligence claims against a carrier for such loss or damage conflicts with this policy."); *Underwriters at Lloyds of London v. N. Am. Van Lines*, 890 F.2d 1112, 1116 (10th Cir. 1989) (the "Supreme Court and other authorities have described the Carmack Amendment in broad, preemptive terms").

Here, there is a valid Bill of Lading and the Carmack Amendment applies to the claims at issue. Therefore, the state law claims brought by Lohr Printing are preempted.[8]

    d.  <u>Defendant CFS's Counterclaims Against Plaintiffs United and McCollister's</u>

Plaintiffs claim that CFS's claims for conversion, contribution, and indemnification against Plaintiffs are preempted by the Carmack Amendment.

As stated above, courts have specifically held that the Carmack Amendment preempts state law claims, such as contribution and indemnification. *See McDougal v. G&S Tobacco Dealers, LLC*, 712 F.SUpp. 2d 488, 494-95 (N.D.V.A. 2010); *Adams Express Co. v. Croninger*, 226 U.S. 491, 505-06 (1913) ("there can be no rational doubt but that Congress intended to . . . supersede all state regulation with reference to it").

CFS's claims stem from United's actions as a motor carrier and McCollister's actions as a household goods agent. For the reasons stated above, state and common law claims against United in this matter are governed by the Carmack Amendment and are, therefore, preempted by the Carmack Amendment. Similarly, state and common law claims against McCollister's, the household goods agent, are extinguished by the Carmack Amendment. Accordingly, CFS's claims against Plaintiffs will be dismissed.

---

[8] Defendant Lohr Printing "concedes that its claim for common law negligence is barred." Doc. No. 117 at 23.

    e.   <u>Additional Discovery Under Rule 56(d)</u>

Under Federal Rule of Civil Procedure 56(d), "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." *See also Dowling v. City of Phila.,* 855 F.2d 136, 139 (3d Cir. 1988). "A party seeking further discovery in response to a summary judgment motion [must] submit an affidavit specifying, for example, what particular information is sought; how, if uncovered, it would preclude summary judgment; and why it has not previously been obtained." *Pennsylvania, Dep't of Pub. Welfare v. Sebelius*, 674 F.3d 139, 157 (3d Cir. 2012) (citations omitted).

Here, Lohr Printing has submitted an affidavit and brief, stating that additional discovery is needed to show, *inter alia*, the full communications between Held and McCollister's, what McCollister's and/or United would have done had a value been declared, and whether McCollister's was a disclosed agent or broker of United. After considering the arguments raised in support of the cross motion for continuance, the Court finds that Lohr Printing has failed to show how any additional discovery would uncover any material facts for the purposes of the present motion.

CONCLUSION

For the reasons set forth above, the motion for summary judgment will be granted and the motion for a continuance pending additional discovery will be denied.

*/s/ Anne E. Thompson*
ANNE E. THOMPSON, U.S.D.J.

Dated: 7/17/14